And I'll take up 12-35926 Wandering Medicine v. United States and McCulloch. I believe the appellants have decided that they're going to divide up their time with an amicus. Could you go over that with us, please, before we get going? Yes, Your Honor. We have ceded seven minutes of our time. Hang on a second. We left something in the roving room. We'll be right back. I apologize. No problem. All righty. I'm sorry. Could you introduce yourself again, please? Thank you. David Bradley Olson, Henson & Efron, Minneapolis, superior pro bono, on behalf of the plaintiff's appellants. How are you dividing the time? We would like to cede seven minutes of our time to the Department of Justice in Reserve III for rebuttal. So you're going to take 10? I'll take 10, no. 10-3, they get 7. Correct. Gotcha. Okay. May I begin? Please. May it please the Court. In 1986, the United States Supreme Court in Gingells v. Thornburg said that Congress Act eradicate inequalities in the political opportunities that exist due to the vestigial effects of past purposeful discrimination. Said Gingells, the ultimate test under Section 2 is whether a challenged practice, based on the totality of the circumstances, interacts with social and historical conditions to create an inequality in the political process. I'm here today in 2013 because Montana Indians living on reservations are still fighting for equal opportunities to participate in the political process with respect to late registration to vote and the ability to vote early by absentee. Let me ask you this procedurally. I want to make sure I've got the story straight. This is an appeal of a preliminary injunction, right? That is correct. The mandatory injunction still remains to be seen. Correct. For permanent relief down the road. The way I read the record, it looks like, as a practical matter, what was tried in district court for this preliminary injunction dealt with the 2012 election, leaving for the permanent injunction the permanent relief down the road. And if that's true, I don't know what we can do about the 2012 election. It looks like that's come and gone. The complaint, Your Honor, asked for relief not only with respect to the 2012 election, but with respect to all future elections as well. I understand that, but that's why I say that's where the permanent injunction down the road comes in. It looks like what was actually tried was the 2012 election. Right. From a theoretical standpoint, should this Court find that the Voting Rights Act has been violated, conceivably it could void the election because it was an unlawful election. That's unlikely to happen, but conceivably it could. And because the Court could order that relief, the case is not moot. And because it's necessary for this Court to define the correct test and correct a fundamental error of law committed by the district court, it's necessary for this Court to rule. Even if it's not moot, let's assume for the sake of discussion it's not moot, even though there's very little we can probably do about the 2012 election. There was evidence, wasn't there, presented by the counties that they can't do in the couple of weeks before the election what they, what you wanted them to do. There was evidence to the contrary, too, but there was some evidence that they just couldn't do what you wanted. You filed the lawsuit less than a month before the election. Even if it's not moot, why would the district court have used this discretion saying, look, it's just too short a time to accomplish what you want? Because voting, Your Honor, is a fundamental right. The irreparable harm is established by an abridgment of that right. The counties argued as a matter of administrative convenience that it might be difficult for them to establish satellite voting within the few days remaining before the 2012 election. They said they can't do it. They said they can't. Okay. And you said they can. And the judge heard evidence back and forth, and they, you know, within his discretion, said, I agree with them. How can we find that's an abusive discretion if there was some evidence to support what he did? We don't think there was any evidence to support what he did, and as a matter of fact and law, the district court got that wrong. Well, let me go to not the question of administrative convenience, because I think there's, you know, that could have gone either way. I mean, it was a pretty short time. What if the district judge made a flat-out mistake of law? Then how are we supposed to look at this case? We're asking here that you remand with specific instructions to apply the correct test under the Voting Rights Act. And are you arguing that the district judge made a flat-out mistake of law? Absolutely we are. And the mistake of law is I'm just kind of trying to understand what you've said in your brief and what the government has said in its ACUS brief. The mistake of law is that the district judge concluded that because the Indians on the reservation were able to elect representatives of their choice, that was the end of the matter with respect even as to the opportunity claim. And that's wrong. We believe that's absolutely wrong, Your Honor. Therefore, we should void the election? I'm saying that conceivably that is one remedy that could be applied. We're not asking the Court to do that. If you're not asking to do that, then what are you – what remedy do you want? The remedy we want is for the Court to declare the correct test under the Voting Rights Act, because it's necessary to proceed in this litigation and all future litigation. But that isn't really a typical remedy. That's just asking the Court to – that's sometimes we look at as, you know, I'm not sure that takes you out of mootness. If you're not asking to void the election, you know, I don't know, is it – are you – are you asking the Court to vacate entirely what was said on the preliminary injunction so that the – because what I understand to some extent, that the counties are saying that they weren't – you know, the timing did not also allow them to develop a complete record, and so you still have the permanent injunction out there. So, you know, I guess why not just say it's moot and let everyone go back and start on a clean slate? It's not even going to be the same judge, right? Because that judge retired, is my understanding. Although if we were to do that, we're now approximately a year out from the 2014 elections. When this suit was filed, it was approximately a year out from the 2012 elections. We're going to be in the same position in 2014 that we were in in 2012 unless an appellate court clarifies the correct standard to be applied in this voting rights litigation. Well, okay, so let's talk about the standard that you're asking. My understanding is that subsection B of 42 U.S.C. 1973 says that in making a claim that the political processes are not equally open to the litigant must show two things. One, that members of the protected class have less opportunity than other members of the electorate to participate, and two, that they have less opportunity to elect representatives of their choice. So what's you're asking, you don't want and to be interpreted as and. You don't want to. You want this Court to say that they don't have to put on any evidence of number two, right? In a vote denial case, that is our position. How do we – but that can be right. What you mean is less opportunity, and the fact that you can elect some doesn't mean you have equal opportunity. Our position, Your Honor, is that the and to elect representatives of their choice is not dispositive in a voting rights denial case. But I think you're asking for more, that it still would be some evidence, wouldn't it? It's one factor that can be considered. But my understanding is that you're asking to say that and doesn't really mean and, and so there's no requirement of any showing on the second part of it. What we're asking this Court to say is that in a vote denial case where the right to vote has been denied or abridged based on account of race, that the fact that certain minorities have had ability to elect representatives and representatives have been elected becomes virtually irrelevant. The statute says what it says. So you're writing out the and, really, in terms of – and that's where I'm trying to – if and, you know, you would have to find it to be ambiguous to look at the – if you do statutory construction, if you say the language is clear, then before you look at the legislative intent of Congress, you would say that it was ambiguous and so that you would look to it, even though everyone always peeks under the covers anyway. But that being said, what I'm understanding you to say is that the and doesn't mean and, that that's what you're asking this Court to say. We are asking the Court to say that in a vote denial case. Absolutely we are. Do I understand correctly, Dick, in Montana you can vote by mail, is that right? Correct. And on the voting day they could go to the offices where you wanted the absentee voting to take place, is that right? On the election day? On election day you can go to a polling place. They do have polling places on the reservation on election day. Okay. But 30 days prior to election, there's no ability to register to vote at those places, and there's no ability to vote absentee at those places. They've got to drive tremendous distances to their county seats. Unless they go on election day and then take their ballot to the polling place. That would have to be before 8 a.m. on election day if it's an absentee ballot. Did you identify anybody who was not able to vote, actually name, come up with a single human being who couldn't vote? No, we did not, nor do we think that's the correct issue in this case. The question is not whether the plaintiffs had any ability whatsoever to vote despite any hurdles that may have been thrown in front of them. Is there anybody who couldn't jump over the hurdles? Not to my understanding, no. Not this group of plaintiffs. Now, let me come back to the mootness question. When you are asking for the preliminary injunction in front of the district court, was your argument directed solely at a preliminary injunction with respect to the immediately upcoming election, or was it also asking for a preliminary injunction that would require preparation for the future elections? How was your argument asked? It was phrased in terms of 2012 and all future elections. A remedy in 2012 alone would be no remedy at all. No, but I'm asking you what you were asking out of the district judge. I understand that if you don't get anything ever, you don't get anything ever, but I'm asking what was the question that the district judge thought was being presented to him, and what was the question that he thought he was answering? Was it only as to the 2012 election, or was it for more than that? It was for 2012 and all future elections, and that's even in our complaint. Even as to the preliminary? I understand it's in the complaint. Even as to the preliminary, correct. What would have been left for the permanent injunction? The district court had the opportunity to consolidate the two into one hearing. It didn't do that. From my standpoint, the preliminary injunction would have been mere cleanup after the correct test was applied and relief granted at the preliminary stage. Isn't there an argument that the preliminary injunction was really only as to the 2012 and the permanent was going to address the 2014 and future elections? I mean, everyone was just up against it. I mean, we're talking days before the election when these hearings were happening. Certainly that was part of the defense that it was difficult to do in the limited time provided, but our complaint was we wanted relief not only for 2012, but for all future elections. But what was Judge Siebold, what did he think he was going to do on the permanent injunction? Didn't he think he was going to address future elections on that? Obviously, the future that would make the injunction permanent. We're already asking for relief into the future. It's temporary relief. It has to be made permanent under the rules. What happens if we find that this appeal is moot because the only thing being appealed is the preliminary injunction and the thrust of the request for the preliminary injunction was as to the 2012? That's the only thing that Judge Siebold thought he was deciding on the preliminary injunction. So we say it's moot. What happens with respect to law of the case? Now, it's going to go back to a different judge, and you're going to argue to that different judge that Judge Siebold made a mistake as of law in interpreting the word opportunity. Is this new district judge going to say, well, listen, that's law of the case. That's already been done? What happens? I could only speculate on that, Your Honor. But in my experience, when I go to a district judge when another has already decided the case before him or decided the law, they generally tend to follow their predecessors. Suppose we said we think it's moot because you were really arguing about 2012 and that train has left, but we don't endorse the reasoning of the district judge. The district judge should – the new district judge should rethink it when it goes back for the permanent injunction. Would that satisfy what you're after? If we had the correct test declared, that's what we're asking for today. Well, no, so it wouldn't satisfy you. But I'm – if I could finish, please. But if you declared the case moot, I don't know that you would have the power to do that. And I just – I'm just about out of time. I'd like to refer you to Babbitt v. UFW National Union, U.S. Supreme Court 79, where they said, The policy implications for adjudication of election procedure disputes assures the construction of the statute will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held. Unless this Court pronounces the test, we could be in the 2014 elections before we even get a preliminary decision, and we could be in the same position again because the Court has applied the wrong test and is likely to apply the wrong test absent guidance from this Court. Thank you. We'll hear from the government. Thank you. Ms. Zuniga. Good morning. Good morning. Morning. May it please the Court, Erin Flinn, on behalf of the United States. Your Honors, we just want to be clear that we're participating solely as to the legal standard under Section 2 of the VRA in this appeal. Judge Callahan, you raised earlier the plain text of Section 2B as a starting point in the analysis for the district court's analysis of this case. Yeah. I mean, it seems to me that the Department of Justice wasn't terribly happy with the voting rights case that was decided before the Supreme Court this year, but this is a different section, so the Department of Justice is teeing up with cases on this particular section. Right. Well, Shelby County, Your Honor, addressed only Section 4B. Really, the Court's holding in Shelby County only addressed Section 4B of the VRA, and whether or not it's an indication that the Supreme Court's pulling back a little. I wouldn't agree with that, Your Honor, at all. The Supreme Court looked at Section 5 in the context of Section 2 being an available remedy to protected groups under the statute, and if anything, the importance of Section 2 is enhanced given that Section 5 right now until Congress, and unless Congress amends Section 4B. Right. So get me back past the plain language here, because it seems to me you're asking to write out an and. No, Your Honor, and that's where I want to start, is with the plain language, because the plain text of Section 2B requires the plaintiffs to show, based on the totality of the circumstances, only that the political process isn't equally open to them because they have less opportunity than other members of the electorate to participate in the political process and to elect the representatives of their choice. And what the district court did here, Your Honors, is err because he required the plaintiffs to show unequal access and an inability to elect representatives of their choice in order to state a Section 2 violation. And requiring the plaintiffs to show an inability to elect the representatives of their choice under Section 2B is not the same as the statutory showing that they're required to show less of an opportunity to elect candidates of their choice. And so what the district court did here was say that plaintiffs had to show they had no opportunity to elect representatives of their choice in order to prevail under Section 2. And the plain text of Section 2B requires them only to show less of an opportunity. And so we'd say that that's where the district court erred in looking at the Section 2 analysis. But you're not saying — I heard Mr. Olson to say that they don't think they need to show anything on the number 2. No. We're saying that in this context, what the district court does is what district courts do in all Section 2 cases, is look at the totality of the circumstances to determine is there less of an opportunity to participate in the political process and less of an opportunity to elect candidates of choice. In these types of claims where you have ballot access and registration issues, it's normally going to follow from less of an opportunity to elect — I mean, to participate in the political process that plaintiffs have less of an opportunity to elect candidates of their choice. So the standard isn't that plaintiffs can't vote or that they can't elect candidates of their choice. It's that they have less of an opportunity relative to other members of the electorate. So when we're looking here, the plaintiffs are basically, you know, your — So is any evidence that they have elected candidates of their choice, is that irrelevant then? The minority electoral success is one factor in a number of factors that the Supreme Court has said courts look to under Section 2. The relevance of minority electoral success is going to vary with the nature of the claim and all the universe of cases looking at Section 2. So it's not irrelevant, then? It's not completely irrelevant, but there are other factors that in this sort of ballot access and registration case sort of become more important to the totality of the circumstances analysis. And what the district court did here was not only misinterpret the statutory language to require the plaintiffs to show an inability to elect candidates of their choice to prevail, which was wrong, because they only need to show less of an opportunity to participate in the process and elect candidates of their choice, but then on top of it, even if the Court had recited the right standard, which it didn't, it would look only to minority electoral success as one factor in a number of factors that could be relevant, and courts don't treat ability to elect when they're treating it as one factor as dispositive in any case. And so there's kind of two levels of error here. The district court got the statutory text wrong. And then even if the district court had gotten the statutory text correct, which he didn't, you wouldn't normally treat it. There's an argument that he sort of misspoke, because it does look like that he did look to some totality of the factors. It doesn't look like that's the only thing he looked to. Your Honor, on the basis of what the district court said, I think it's difficult to say that he misspoke, because on page 7, he said the issue is whether there's less access to in-person absentee voting and late registration, and that plaintiffs are unable to elect representatives of their choice. And he goes on to say the plain text in the cases applying, section 2B, require plaintiffs to show both unequal access and an inability to elect. And that's not the statutory showing. It's not what the plain text requires. Again, on page 12, he says that there's an explicit requirement that section 2 plaintiffs show that the challenge practice results in their inability to elect candidates of choice. Again, that's not the statutory showing. And on 14, he says since the plaintiffs are able to elect their candidates  And even if, you know, there was some doubt as to what the district court meant, on appeal, the county defendants repeatedly stay in their brief that the statutory standard is that plaintiffs have to show they can't vote and that they can't elect candidates of their choice. And that's on pages 8, 15, 58, and 59 of the county defendant's brief. They say repeatedly that the plaintiffs have to show actual vote denial, which isn't the standard under section 2 of the VRA. And so I don't think that, you know, we can just take for granted that the district court misspoke in this case, Your Honor. Well, as I read the district judge, I'm now reading the first sentence of that last paragraph on page 12 to which you alluded, but you didn't read the full text. I'll just read the first sentence. Finally, this is now the district judge. Finally, and most importantly, because of the explicit requirement that section 2 plaintiffs prove that the challenge procedure or lack thereof results in the inability to elect representatives of their choice, dah, dah, dah. I mean, that's a statement of the law. It is to say a plaintiff under section 2 has to prove that they cannot. And that's essential to a section 2 claim in his view. And that's what we're saying, is that that's a completely incorrect statement of the law. Okay. Thank you very much. Thank you. We'll hear from the appellees. Before you start, let me ask, are you going to be taking all the time? I certainly hope not, Your Honor. My name is George Quintana. I represent the State Defendant, the Secretary of State. I expect to use maybe three minutes. What I meant was, are you going to split it with three minutes? We are going to split it, Your Honor. Okay. May it please the Court. As I stated, my name is George Quintana. I represent, I'm a Special Assistant Attorney General and Chief Legal for the Secretary of State, and I'm here representing the State Defendant. The plaintiff appellants have failed to show that the Secretary of State is a necessary party. They did not and they cannot show that the Secretary of State violated any duty or any law. The plaintiffs have requested the specific relief of opening up late registration and in-person absentee offices. The Secretary of State does not issue absentee ballots. We do not open satellite clerking. Why shouldn't, there isn't any case out there from the Supreme, your State Supreme Court. Why shouldn't we just certify this issue to the Supreme, State Supreme Court and ask them to give us an answer? Your Honor, I would not have an objection with that. That was brought up in the hearing by the attorney for the county defendants and Judge Siebel stated that, you know, it was six days before the election, there wasn't time to certify that question. Although that dealt with whether or not satellite offices were even legal under the Montana Code. I think we know the answer to that now that they are legal. The question is now whether it's the compelled under Section 2. The county defendants, and I don't want to speak for the county defendants, these are two separate cases, but the county defendants, I believe in their brief, argue that this may not, the satellite offices may not be legal. Oh, I may be wrong. I thought that had been settled. From the Secretary of State point of view, we're relying on the letter of advice given to us by the Attorney General that says satellite offices could be opened under the county's self-governing powers. Right. That's what I'm referring to. Yes. And it's interesting because the plaintiff's appellant's theory of the case is that we should disregard that letter, that we should order the county commissioners to open up these satellite offices, yet they point to no law or case that agrees with this position that the Secretary of State can use her powers under Title 13 to force an outcome upon the county commissioners under their discretionary powers under Title 7, which is local government under the Montana Code annotated. And perhaps we'll hear an answer to that in rebuttal. You made a motion to dismiss in district court. Yes, Your Honor. Based on a ---- Is that just laying out there? It is, Your Honor. The plaintiffs have stayed the proceedings. I mean, they can talk about how urgent the timing is, but they've stayed the proceedings below. So our motion to dismiss under 12B1 for lack of standing and 12B6 for failure to state a claim upon which relief can be granted is just sitting there in limbo, although the judge's decision did grant us a footnote saying that we made a pretty decent argument. Your three minutes are up. Then I hope I did well. Thank you, Your Honor. Thank you very much. I appreciate it. May it please the Court, counsel. Good morning. I'm Sarah Frankenstein representing the county defendants in this case. It's important to note all the ways that one can vote in Montana, including Native Americans who reside and vote in Montana. This case is about absentee voting. That's the second thing to clarify. It is not about the right to vote. It is about how and where and the logistics around receiving an absentee ballot. There's five ways to receive an absentee application to obtain an absentee ballot in Montana. First is you can mail in the application, postage prepaid by the county. Second, you can fax in your application for an absentee ballot. Third, you can hand it in in person at the election office. Fourth, you can send it with a designated person, whomever you choose, who can hand in that application and then receive your ballot for you. And five, in Montana you can sign up for lifetime absentee ballots to be delivered to any address of your choice. Yeah, all of that goes to equal opportunity, that's to say ease of access. I'm not sure I want to get there yet, and I'm not sure the district judge even really got there. The district judge in his order says, well, you've got to show as a matter of requirement under Section 2 an inability to elect representatives of their choice. And as I view it, we really don't have much finding out of the district court as to what differential difficulties the tribal members might or might not have. I understand that's the argument you're wanting to address to us, but I'm a little reluctant to go to that question without a little more out of the district judge. Prong 1 and Prong 2, both within the text of the Voting Rights Act, Prong 2 seems to be the thrust of the plaintiff's appeal, but they also must prove Prong 1, which is that there was unequal ability to vote. And all of these many methods of ---- No, no, it's unequal opportunity, not unequal ability. The word is opportunity. That's the statutory word. And there was absolutely no reference, no testimony from any plaintiff at all indicating that any of these other ways are ---- pose a problem, that they're unable to cast a vote, that they in fact don't vote, or that they're burdened in doing them. In fact, the plaintiffs do vote in these many different ways. Let me ask you a different question, and this may help focus your argument in a way that's helpful to me. You've read the government's amicus brief and you've heard the government arguing here. Do you disagree with the government as to its abstract statement as to what the law requires, not yet applying them to the facts of this case? Yes. And I think you're referring to Prong 2 about the word and in the second portion. Well, I'm not referring only to the word and. I'm asking you, do you disagree with the government's description of what the government says is the meaning of Section 2? Absolutely. Okay. So what's your view of the meaning of Section 2? If you look at the first section, which is Section A, it tells you what the Voting Rights Act prohibits. It prohibits the denial of the opportunity to vote. You can also bring a vote dilution claim, but it's one of the two, vote denial or vote dilution. Section B tells you what you need to prove to prove Section A, the totality of the circumstances and the various things you must prove as elements to prove a Section A claim. Much of the discussion has been with regard to the second prong in B, but they also needed to prove Prong 1, which they did not prove, and they also needed to prove Prong 2. You're losing me a little bit when you say Prong 1 and Prong 2. What's Prong 1 and Prong 2 as you're using those terms? Prong 1 is that members of the minority class have less opportunity than other members of the electorate to participate in the political process. And Prong 2 is? That the minority has less opportunity to elect representatives of their choice. So for both prongs, you view less opportunity as the applicable test. No, Your Honor. Well, you just said less opportunity as a lead-in to both Prong 1 and Prong 2. I rely on the text of the Voting Rights Act. I am, too. But I just heard you say Prong 1 is less opportunity than other members to participate in the political process, and then you said Prong 2 is less opportunity to elect representatives of their choice. Is that what you meant to say? I mean to say what the Voting Rights Act says. I mean to read it to you. It says, and to elect representatives of their choice. I understand. But does opportunity modify both 1 and 2? That's the question. First of all, I don't think it does, Your Honor. And secondly, it doesn't matter. Because they have opportunity and did, in fact, vote in other ways. Okay. I think I don't want to tell you how to spend your time, but I think to make it most productive for everyone, I think Judge Fletcher was asking you how do you interpret the language, and I guess what I just heard out of there is that you don't think opportunity modifies 2, even though that's the way that you just read it. You said opportunity to do 1 and opportunity to do 2. Then I read it wrong, Your Honor. I would rely on the text. And so you're saying opportunity does not apply to 2. Now, both counsel for appellants said different things, in my mind, that the first counsel, Mr. Olson, said they don't think that they need to even talk about prong 2, that they're not reading that as an and. I did not hear government counsel, Ms. Flynn, I believe, I heard her say that it is an and, but opportunity modifies 1 and 2. And what the judge did here was to focus on 2 and not apply the totality of the circumstances to everything. So the question is, if we say it's not moot and we give statutory construction to it, then that's not about whether you win or lose. It's about what is the test. And if the test is opportunity to do 1 and opportunity to do 2, then apply the totality of the circumstances, then that's ‑‑ but you're saying you disagree. You think it's opportunity to do 1 and 2 stands alone. I do, Your Honor, and that's how the U.S. Supreme Court has issued its interpretation of the statute in Chisholm v. Romer. It's also reflected in this Court's en banc opinion in Gonzalez v. Arizona. You know, I read both of those cases differently than you do, and I certainly would say that Farrakhan 2 goes the other way. Now, Farrakhan 2 is no longer binding as it was vacated, but I read both Romer and Gonzalez to agree with what the government's reading is. Your Honor, I would disagree. If you look at the cases that we've cited, other district courts and other courts of appeals have ruled in the same manner. Well, you know, I think the only case you've got that rules your way is the district court of Montana. As I read the circuit courts from elsewhere, they agree with the government. Your Honor, that's not true. In our brief, we have a number of things. You're saying you have a case exactly on point? We don't need to publish, then. If there's a case exactly on point, then we cite that case and we're done. I cited them throughout my brief where in a vote denial case, the Court indicates that they will not grant plaintiffs relief because the plaintiffs were not able to show that the minority plaintiffs were unable to elect their candidates of choice, and I did cite those throughout my brief. That's oftentimes cited in these cases because, of course, it's explicit within Section 2 of the Voting Rights Act. The Court did not focus on only that in granting our motion to dismiss at the preliminary injunction hearing. The Court found a number of things. First, it found under the Voting Rights Act, the Native American plaintiffs did not prove less opportunity to participate politically. That's the prong one argument. Two, we talked about prong two, that they did not prove. Third, the plaintiffs didn't even plead causation, and causation is required, and if it's not there, it's dispositive of the plaintiff's claim. There was no evidence showing causation. It wasn't even pleaded. And the plaintiffs at the hearing told the district court that we don't need to prove it. Now on appeal, both the Department of Justice as well as the plaintiffs can see that they do have to prove causation, but they'd like you to believe that it's a different test than that indicated in the case law. You know, I'm reading pages 405 to 407 of the Gonzales opinion, and I find no support for your argument. They keep the Gonzales opinion keeps quoting the statutory language, sometimes by inference and sometimes directly. I'll just read first column on page 405, the first paragraph under Section A, the violation of Section 2, this is a court, this is our court, is established if, and then they quote the language of the statute that we have here in front of us, said otherwise, a plaintiff can, now this is our court speaking, said otherwise, a plaintiff can prevail on a Section 2 claim only if, quote, based on the totality of the circumstances, the challenged voting practice results on indiscrimination on the account of race. I see nothing in Gonzales that tells us that there's a different test, opportunity or not opportunity, for the two prongs. Your Honor, it lists it with a numeral 1 before the first prong and a numeral 2 before the second prong, and you'll see no. Of course, that's absolutely right, in brackets, and preceded by the word opportunity. Before the word to elect representatives? I don't believe so. There's no opportunity. Opportunity, I think it's in members equally open to participation by members of a protected class in that its members have less opportunity than other members of the electorate, one, to participate in the political process, two, to elect representatives of their choice. No, Gonzales is simply quoting the statute and inserting those brackets. That's true, Your Honor. So we're back to the same argument. I would have expected, though, in Gonzales, if there were a differential analysis for prong 1 and prong 2, the Court might have said so. It never says a darn thing about it. It keeps giving us the phrase opportunity followed by 1 and 2. Your Honor, this is a wonderful academic argument, but the truth of the matter is the plaintiffs didn't put on any proof that they had less opportunity to elect candidates of choice. That's a different question. I'd first like to understand what the statute means, because I'm inclined to think that Judge Siebel got the statute wrong. There would be no cases that indicate that, Your Honor. As you can see in the Department of Justice amicus brief, there are no cases in support of that theory. But secondly, the plaintiffs didn't prove that they had less opportunity to elect candidates of choice. No proof on that whatsoever. So let me be why Siebel did not abuse its discretion, but if the Court's going to do statutory construction going forward, that's – it is more than a nice academic argument here. Your Honor, first of all, I believe the plaintiffs need to plead this issue, and they need to brief it, none of which was done before the district court. So while we can talk about this on – on appeal, we really need to look at whether or not Judge Siebel abused his discretion. Well, you know, I think – I understand why you want to stick to, you know, this is my argument and I'm sticking to it, but oral argument is part of the – when the judges want to ask questions and we're looking at mootness, we're looking at what – you know, all of those things. We haven't discussed it, but, you know, it's not really helpful to marginalize the questions and keep deflecting them and saying it's an academic argument or it's this or that, if that's what the Court wants to talk about, because I think you want to give an answer to it, don't you? Your Honor, my answer is – Otherwise, the answer is that's an academic argument, you don't need to think about it, and then we go back and think about that academic argument, and you've said nothing. I've given my answer and I'm happy to do it again. There is no word opportunity before the clause to elect representatives. There is no case law that indicates it should be inserted there. So our argument is Judge Siebel did not err when he found that the text should be read as the text is. Let me ask a practical question, get away from the academics for a minute. You know, if I can interject, as a former academic, I always find it really hurts a guy when they say, that's just academic. I can recognize an insult. I did not mean to do so, Your Honor. That was facetious. Okay. Please go ahead. As a practical matter, if you lose, what would you have to do? What do they want you to do? I'm not sure what it is that the plaintiffs are asking us to do. Well, don't they want you to designate somebody at Fort, how do you say that, Buckknap Agency? Right. At Lame Deer and at Crow Agency, designate somebody there to register people and receive absentee ballots? Right. They're asking us to set up a satellite office, presumably now before the 2014 election. I mean, a satellite office, you don't have to build a building there. You need to designate someone to do this. Is that right? Right. Is that a big deal? I mean, I'm having a hard time visualizing why that's such a big deal to do. It is difficult, Your Honor. And I would ask that you take a look at Sandra Boardman's testimony. She was the one who talked a great deal about this. She's the election administrator in Blaine County, and she testified how it doesn't just require a room that you could rent, but it requires ADA, high-speed Internet, but also somebody with what's needed. High-speed Internet, which is what, like plug it into the wall or something? Well, it's got to be high-speed, which isn't necessarily what all buildings would have. But it also has to have --. Do they have Internet up at these places? I'm sorry, what? Do they have Internet service in these places? That was up in the air. Many people couldn't confirm whether or not they did. All right. But are you saying you can't do it in a year? At the headquarters, they don't have high-speed Internet at the headquarters of the Tribal? I'm sorry? They don't have high-speed Internet at the Tribal headquarters? There was mixed conclusions on that. Many people --. There was much testimony, for instance, Bighorn County, there was no testimony about any room that was available. Okay. So they need to have high-speed Internet. What else do they need? They need to have a Montana Votes computerized system there that has a scanner and somebody who's authorized to use it, which requires a C-number, which means you pass the --. Why is that such a big deal to get a scanner up there? Because absentee ballots are not just handed out. You must fill out your application, and then all your information is typed into Montana Votes, and then it produces a scan code or a bar code, and that accompanies each absentee ballot. So then when you go and hand your ballot back in and say, here, I'm voting, the clerk and then up would pop your name and your signature, and they would compare --. Why is that such a big deal to do? I don't get it. Because there are not enough people who are C-certified to man both offices. We would need three people? Yes, you would need three people at the ballot. One for Fort Belknap, one for Lame Deer, one for Crow Agency? Right. What's the big deal with that? It doesn't need somebody there to do that. You have to have the C-certification. Okay. So you get them a C-certification. Would you have to go to France to get those, or, I mean, where do you get a C-certification? You have to go through the, I believe it's a computerized training in order to do that. Is that a big deal to do? It is, Your Honor. Why? Ms. Boardman indicated that it's a very, it's not a user-friendly method. But more importantly, Your Honor --. That's why you couldn't do it in a week, right? Absolutely not. All right. But now we're talking about a year. Are you saying, so you don't have the same impediments for a year as you did for a week. And I think part of all that you've been saying is that the record needs to be further developed on what happens in 2014. Your Honor, it was well-developed about what would happen even if all of this is in place and we use the system that the plaintiffs proposed. It would be impossible to have a recount. That was clear from Ms. Boardman's testimony. That even if we had the time and the resources and everything to set this all up, you could not have a recount because their method that they've proposed requires altering and voiding balance, back and forth, constant communications of altering balance, voiding its corresponding balance back at the home office, and doing this back and forth by phone and through the Montana vote system. They do this elsewhere in Montana, don't they? They do not, Your Honor. They don't have satellite voting elsewhere in Montana? No, they do not. This is the first. How do you deal in Montana with absentee ballots that are just sent in by mail? Are those counted on the same day? Are those what on the same day? Are those counted on the same day? I'm not sure on what day they're counted, but when they come in, they have a barcode on them, so then they can scan it in. Up pops your name and your signature. Well, I understand what you're saying, but I assume that any absentee ballots sent in will have a barcode on it. I think I'm hearing you say that you think it's required that you do the scanning immediately in order for the counting. I'm not sure that that's so, meaning if you count absentee ballots in the week or ten days after the election when the absentee ballots might make a difference, so you do it ten days later. And you don't do it necessarily at the remote location. You do it wherever you need to do it. When the voter comes in and he says, I want to vote absentee, you must take down their information and get their signature and put it into the Montana vote system because there has to be a signature in there to compare when the paper ballot comes in. So you have to have access. It also tells you which sequential ballot to be issued to that voter. And that's told to you through Montana vote. So you have to be in front of that computer screen and know, oh, this is voter number three. You know, I have to say I'm unconvinced, but I also have to say that given the current state of the record and how little we have as a finding from the district judge, I'm quite unequipped to decide this. I think it would be very helpful to go through the discovery process and do it through the permanent injunction rather than through this preliminary injunction appeal. Can you speak to mootness? Yeah. Yes, Your Honor. We do believe this case is moot. It's not evading review, capable of repetition, yet evading review because the case still is at the district court level. By nature, it cannot evade review because the plaintiffs, if they receive an adverse ruling there, they can seek review at that point. It sounds as though it might be, although until I started hearing argument today I didn't think it was. We're now told, well, listen, we're going to go back down and we're going to get another one of these last-minute situations because of the timing, the timing that this is going to be going forward. Your Honor, we do have a year. The plaintiffs filed a motion to stay the case. We were opposed to it. We don't have a ruling on that yet. So conceivably the district court could begin ruling on this case at any time. And then time for appeal? I mean, what are we talking about? Well, that's a good point. But if there's an appeal by the plaintiffs, that means they had an adverse ruling. Yeah, yeah. I'm assuming that's possible. But you might also get one you might want to appeal to. Right. But it wouldn't be, it wouldn't need to be fast-tracked if we did. You say it would not? No. If the defendants got a ruling, we wouldn't need to, we wouldn't ask for it to be fast-tracked. So the time frame isn't of importance to us, if I understand correctly. It's the time you'd want to fast-track if you lose. Is that what you're saying? No, I'm saying the plaintiffs are the one who believe that the time is of the essence here. But they filed the motion to stay at the district court level. Anyway, Judge Fletcher is asking you if the judge says you have to do these things, you have to do all these things. You have to put in the wireless Internet. You have to get the scanner and everything. You wouldn't ask to have, you wouldn't appeal that on a fast-track basis? Oh, I suppose depending how quickly that order came down before the election, that's conceivable. I kind of think so. I see you're over your time. Thank you. No, you know, I'd like to pursue mootness just one more little bit here, because the mootness is actually a tricky question here. What's your view as to the question that was presented to Judge Siebel and the question he answered? Was it just as to the 2012 election that the preliminary injunction was sought, or was it also a preliminary injunction to get ready for the 2014? Your Honor, I do not remember any evidence coming in regarding down the road two years from now in 2014 whether or not this can be done. All the evidence was whether we can get this going in eight working days, six working days, eight actual days before the election. So the evidence that came in was with regard to whether we can get this done in the following week. And the complaint asked for preliminary and permanent injunction for both the 2012 and future elections. I understand that. I mean, it's just what the complaint says. But I'm trying to figure out what the actual preliminary injunction was that was sought. And it sounds as though the focus was on the 2012 election. Certainly the evidence was, Your Honor. Yeah. Would it be helpful to the parties if we were to indicate at this time our construction of the statute so the district judge knows what to do when it goes back down? Well, I don't know that procedurally that that's the method. That's as if one is seeking an advisory opinion of the court rather than a reversal of the district court's decision on the preliminary injunction. I don't believe that's the proper method of seeking appeal. I believe that the district court should be allowed to determine the case, and then if the plaintiffs or either side are unhappy with it, they can seek review at that time. Suppose we said we specifically expressed no opinion on the correctness of the ruling. How about that? But instead of ---- In other words, we don't say this is how we construe it, but if we want to put you on notice, we're not endorsing it either. Oh, and affirm the decision, but ---- No, no. Dismiss it as moot and say, and this should not be construed in any way as our endorsing of the decisions by the district court interpreting the law. Certainly, Your Honor. That was our request in the motion to dismiss on mootness ground. We didn't expect anything more than that. Okay. Anything else? Okay. But the reason we're suggesting it this way, I think, is to free up the district judge who will get this case, who of course will not be Judge Siebel, to look at the legal question afresh rather than subject to the constraints of the law of the case. I would expect that, Your Honor. Okay. Good. Thank you. Mr. Olson, I think you have three minutes left. If I may, since we finished with a discussion of mootness, I think I'll start there. In 1998, Ruiz v. City of Santa Maria, this Court said, Claims for injunctive relief are moot only when subsequent events make clear that the alleged violations are not reasonably expected to recur. Here, they're not only reasonably expected to recur. The county has said it has no obligation to provide sounds like that. Well, if you construe it as 2012, it's not going to reoccur. 2012 will not recur. No. Yeah. So if you construe it narrowly, if you construe it more broadly, elections will continue, we hope, if the government ever gets back to work. The elections will continue, and the unequal opportunities to participate in the political process will also continue. I'm sort of curious why you didn't put this in a posture where we have a final order so we don't have this permanent injunction still pending. Why didn't you get the judge to just say this is not only my temporary ruling, this is my permanent ruling, and then we don't have this mootness issue? In hindsight, that would have been a better way to proceed. I wasn't involved at the trial court level, so I don't have any further insight onto that. This is a real procedural mess the way we have it now. Well, it is, and it's also a legal mess because there's been no higher court, no appellate court that's ever pronounced a clear standard in cases like this. Most of the cases that have reached the appellate courts are vote dilution cases that are markedly different from this one. Am I wrong as the Department of Justice on interpreting the statute? Or am I? I can't tell you that I said the same thing. Well, what do you think you said the same thing? I meant to say the same thing. I think they said something a little bit different than you did because, to me, you were writing out number two. They were reading in number two but prefacing it with opportunity. But you said no, it is not an and. Perhaps I wasn't clear. The statute says what it says. We believe that in vote denial cases, the part about electing representatives, which was added to the statute in the context of vote dilution cases to essentially correct what Congress viewed as a Supreme Court error in construing the statute, it was all in the context of vote dilution cases. And I reread the Senate report yesterday, and it goes on and on talking about opportunities, opportunities, opportunities. And the only time we see the language and to elect representatives is in the context of the discussion to fix what Congress viewed as the error. So you are reading it differently than they are? If I'm saying that, I'm not meaning to. If we look at Chisholm v. Romer. Let's just cut to the chase. Do you agree with the government's construction of this statute as expressed in the government's amicus brief?  Yes or no question? That's a yes.  Okay. I may not have articulated that well, but that's a yes. I've only got a few seconds left. In essence, the county's argument is that the county is able to discriminate in ways limited only by its imagination. But so long as Indians are elected at local levels to some extent, there can be no voting rights violation. That's not Congress's intent. That's not what the law says. And if we look at Chisholm v. Romer, any denial or abridgment of the right to vote is a voting rights violation. It says that flat out. Thank you very much. Thanks to all counsel. The case is just argued and submitted. We'll stand and recess.
judges: Silverman, Fletcher, Callahan